UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Christine McDonald and William McDonald, | Civil No. 05-0173 (PAM/JJG) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Donald Lewis, in his individual capacity and as a St. Louis Park Police Officer; Kurt Bahr and Dmitri Ikonitski, individually and in their capacities as St. Louis Park Police Officers; Officers Tom Doe I-IV; and the City of St. Louis Park, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

**A.    The Parties and Claims**

This case is based on a protective hold police officers placed on Plaintiff Christine McDonald for a suicide attempt in January 2003. Defendants Donald Lewis, Kurt Bahr, and Dmitri Ikonitski were police officers with the City of St. Louis Park ("City") at the time of the events alleged in the Complaint. Tom Does I, II, III, and IV are individuals who were appointed by the City to supervise and train the Defendant officers. Mrs. McDonald is suing for violations of 42 U.S.C. § 1983, and for battery, assault, false imprisonment, intentional

infliction of emotional distress, and vicarious liability under state law. Her husband, Plaintiff William McDonald, sues for loss of consortium.

**B.     The Protective Hold and Related Events**

Mrs. McDonald has a fairly recent history of psychological ailments and memory loss. In April 2002, she fell down a flight of stairs and suffered a traumatic brain injury and amnesia. She subsequently began treatment with clinical psychologist Dr. David Lund for amnesia and memory loss. Dr. Lund diagnosed Mrs. McDonald with a major depressive disorder; anxiety; and memory, concentration, and attention deficits. On January 27, 2003, Dr. Lund met with Mrs. McDonald. He noted in her file that she was moderately suicidal and had been considering driving her car off a bridge. Dr. Lund referred her to psychiatrist Dr. Richard Lentz to evaluate her medication. After meeting with Dr. Lentz on January 30, 2003, Mrs. McDonald attempted to drive to Dr. Lund's office, but she got lost due to her amnesia and memory loss. She drove around for some time before arriving at a Holiday Inn in St. Louis Park. She decided to check into the hotel because she was feeling confused and wanted to be alone.

Mrs. McDonald ate dinner and drank a glass of wine at the hotel restaurant. She then returned to her hotel room and called Dr. Lund. She told Dr. Lund that she was frustrated with him and was not satisfied with her treatment. She asked Dr. Lund to come to the hotel and said, "I just told him I couldn't take this anymore. I wanted this all to end." (Christine McDonald Dep. at 22.) Mrs. McDonald later explained in her deposition that "[a]nd by me

2

saying that, I did not mean that I wanted to end my life. I wanted all the other things in my life to stop. I wanted to be me again . . . ." (Id.) She also told Dr. Lund that she had taken ten pills and consumed alcohol, and that she wanted to kill herself. Dr. Lund recalled that Mrs. McDonald reported drinking five beers and wine. At the end of the conversation, Mrs. McDonald said that she "wanted this all to end," and she hung up the phone. (Id. at 23.)

Dr. Lund called the Minneapolis Police Department and told them he had a patient in crisis who was attempting to commit suicide with alcohol and pills. The call was transferred to the St. Louis Park Police Department, and Officers Lewis and Ikonitski were immediately dispatched to the hotel. The officers knocked and identified themselves as the police, and Mrs. McDonald opened the door. Officer Lewis pushed Mrs. McDonald back and said they had received a call from Dr. Lund that she was attempting to commit suicide. The officers saw several alcohol containers and a pill bottle in the room, and they noticed that Mrs. McDonald's speech was slurred and her eyes were watery, glossy, and bloodshot. Mrs. McDonald told the officers that she had a glass of wine with dinner, and she claims there was only one glass of beer in the room. Officers found Mrs. McDonald's medication, Paxil and Trazodone, in her purse. When Mrs. McDonald attempted to get her purse and leave, Officer Lewis pushed her back down on the bed.

After the officers arrived, Mrs. McDonald called Dr. Lund, but Officer Lewis took the phone from her hand and spoke with the doctor himself. Officer Lewis wanted to verify the information Dr. Lund had previously told the Minneapolis Police Department. Dr. Lund

3

told Officer Lewis he believed that Mrs. McDonald had consumed alcoholic beverages and taken pills, and that she said she wanted to commit suicide. Dr. Lund agreed that Mrs. McDonald should be placed on a protective hold and evaluated at a hospital.

Mr. McDonald and Hennepin County Medical Center ("HCMC") paramedics arrived shortly after the officers. One of the paramedics also spoke with Doctor Lund, who again confirmed that Mrs. McDonald reported taking pills and drinking alcohol and said she wanted to kill herself. Soon thereafter, Officer Bahr and Sergeant Giebel arrived and escorted Mr. McDonald from the scene.

One of the officers explained to Mrs. McDonald that they were placing her on a protective hold for her own safety. Officer Lewis asked Mrs. McDonald to go to the hospital voluntarily, but she refused. She would not move from the chair or put on her shoes. The officers described Mrs. McDonald as intoxicated, combative, hostile, aggressive, agitated, and resistant. The officers handcuffed Mrs. McDonald when she refused to walk voluntarily. Mrs. McDonald fought the officers, kicking, protesting, swearing, and flailing her body. Mrs. McDonald claims that during the encounter, the officers cursed at her, took the telephone away from her, removed a lit cigarette from her hand, pushed her down on the bed, threw her shoes at her, tightened her handcuffs, slammed her on the floor, and kneed her in the back. Eventually, the paramedics wheeled in a stretcher, and officers placed Mrs. McDonald on it. The paramedics strapped her down and wheeled her out to the ambulance. Officer Lewis filled out an Application by Peace or

4

Health Officer for Emergency Admission form, and Mrs. McDonald was transported to HCMC.

**C.   Mrs. McDonald's Injuries**

Mrs. McDonald claims she suffered a dislocated jaw and a bruised or fractured kidney from the altercation. Medical records from HCMC reflect that Mrs. McDonald complained of wrist, shoulder, and back pain initially upon admission. She reported no jaw or kidney pain, although she told the triage nurse that she had preexisting dental problems and a jaw infection.[1] The triage nurse noted red marks on Mrs. McDonald's wrists and two small slightly red marks on her back. Medical staff diagnosed her with a mood disorder, and she was discharged after approximately three hours.

The next day, Mrs. McDonald went to Cambridge Medical Center. Although tests revealed blood in her urine, a renal ultrasound showed no bruising or other injury. Regarding Mrs. McDonald's complaint of jaw pain, Dr. Jeffrey Cox noted a recent dental extraction and the presence of temporomandibular joint symptoms. Dr. Cox also saw redness around Mrs. McDonald's wrists and scratches. On February 4, 2003, Mrs. McDonald called a telephone triage line and reported back and jaw pain. Dr. Cox saw Mrs. McDonald again on February 7, 2003, and referred her to oral surgery for her temporomandibular joint symptoms.

---

[1] Mrs. McDonald's medical records confirm she had a root canal about two weeks earlier, following which she reported significant pain.

5

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the McDonalds, as the non-moving parties. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     42 U.S.C. § 1983**

Mrs. McDonald claims the individual officers violated her constitutional rights against unreasonable seizure and excessive force. She also brings a claim for municipal

6

liability under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), against the City.

To prevail on her § 1983 claims, Mrs. McDonald must demonstrate that a person acting under color of state law violated a right protected by the Constitution. <u>See</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985). Section 1983 creates no substantive rights; "it merely provides remedies for deprivations of rights established elsewhere." <u>Id.</u> (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 140, 144 & n.3 (1979)). Mrs. McDonald's unreasonable seizure and excessive force claims arise under the Fourth Amendment. However, the officers aver that they are entitled to qualified immunity on these claims.

1. <u>Qualified Immunity</u>

A three-part inquiry determines if the officers are entitled to qualified immunity: (1) whether Mrs. McDonald has asserted a violation of her constitutional rights; (2) whether the allegedly violated constitutional rights were clearly established; and (3) whether there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged acts violated that right. <u>See</u> <u>Foulks v. Cole County</u>, 991 F.2d 454, 456 (8th Cir. 1993). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend IV. Whether a seizure is reasonable must be judged by

7

considering all the circumstances and from the viewpoint of a reasonable officer at the scene. Graham v. Connor, 490 U.S. 386, 396-97 (1989). The right to be free from excessive force is also assured by the Fourth Amendment, Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003), but not every shove or push violates this constitutional precept, Graham, 490 U.S. at 396. Again, the Court must evaluate the totality of the circumstances to determine whether the officers' actions were objectively reasonable in light of the circumstances. Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994).

The Eighth Circuit Court of Appeals addressed circumstances similar to this case in Lacy v. City of Bolivar, 416 F.3d 723 (8th Cir. 2005). In Lacy, the plaintiff suffered from depression and suicidal ideation, and was being treated at a medical clinic for renal failure. Id. at 724. After he threatened to kill himself, one of his doctors recommended that he be placed on a 96-hour hold for a psychiatric evaluation. Id. at 725. Police officers were dispatched to the clinic and determined that they had reasonable cause to detain the plaintiff. Id. The plaintiff resisted the officers and attempted to leave, resulting in a physical struggle and ending with the officers forcibly restraining the plaintiff. Id. at 726. The Eighth Circuit analyzed the plaintiff's § 1983 claim in the context of a state statute that permits a peace officer to detain a person for evaluation and treatment of a mental disorder. Id. at 726-27 (citing Mo. Rev. Stat. § 632.305(3)) . Finding that the detaining officer had sufficient cause to believe that the plaintiff was suffering from a mental disorder and posed a risk to himself

and others, the Eighth Circuit characterized the officer's actions as reasonable. Id. at 727. The plaintiff's resistance to being placed into custody necessitated a use of force to restrain him, and his resulting minor cuts and abrasions did not mean that the force was excessive. Id. at 728.

In the present case, the officers were acting pursuant to Minnesota Statute § 253B.05, which permits an officer to take a person into custody and transport her to a health facility if the officer has reason to believe, through either observation or reliable information, that the person is mentally ill and in danger of injuring herself or others if not immediately detained. See Minn. Stat. § 253B.05, subd. 2(a). The officers were reasonable in placing Mrs. McDonald on a protective hold because they were acting on information from her psychiatrist, who said that Mrs. McDonald had told him she had taken pills combined with alcohol and wanted to kill herself. In addition, the officers personally observed Mrs. McDonald's demeanor and at least one pill bottle and one alcohol container in her hotel room, which corroborated Dr. Lund's information. The officers were reasonable in using the amount of force they did because Mrs. McDonald refused to leave voluntarily and actively resisted being taken to a medical treatment facility. After considering all of the circumstances, the Court finds that the seizure was reasonable and that the amount of force used was not excessive.

In addition, Mrs. McDonald suffered no more than minor injuries. A plaintiff's de minimus injury "is insufficient to support a finding of a constitutional violation." Crumley,

9

324 F.3d at 1007 (citing Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000); Curd v. City Court, 141 F.3d 839, 841 (8th Cir. 1998)). For example, "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury," are insufficient to support a Fourth Amendment violation. Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990). In Foster, the plaintiff claimed that he was twice pushed against a wall while handcuffed and that he suffered nerve damage because of the handcuffs, but he had no medical records to support his claims of long-term injuries. Id. In the case at hand, Mrs. McDonald has not shown that she suffered more than temporary, minimal injuries. Her claims of a dislocated jaw and a bruised kidney are not supported by the medical records, and her pain, scratches, and bruising were minor and temporary.

Mrs. McDonald's § 1983 claims against the Defendant officers fail for lack of a constitutional violation. See Saucier, 533 U.S. at 201. Mrs. McDonald has not shown that the seizure was unreasonable or that the officers employed excessive force. In addition, she suffered only de minimus injuries from the altercation. Accordingly, the officers are entitled to qualified immunity on Mrs. McDonald's § 1983 claims.[2]

    2.    The Monell Claim

---

[2] As part of her excessive force claim, Mrs. McDonald seeks to hold Officer Bahr and Officer Ikonitski responsible for failing to prevent Officer Lewis's use of force. As no excessive force was employed, however, these officers cannot be held liable for failing to prevent any such force. See Hawkinson v. Anoka County, No. 03-4416, 2004 WL 2453046, at *5 (D. Minn. Oct. 24, 2004) (Magnuson, J.) (dismissing failure-to-prevent claim because there was no underlying constitutional violation).

A municipality may be liable under § 1983, but not under a theory of respondeat superior. Monell, 436 U.S. at 694-95. Rather, the municipality must employ a policy or custom that "inflicts the injury" on a plaintiff. Id. Thus, to succeed on her claim against the City, Mrs. McDonald must show: (1) the existence of a continuing and widespread pattern of unconstitutional misconduct by the City's employees; (2) deliberate indifference to or implicit authorization of unconstitutional conduct by the City's policymaking officials after they received notice of the purported misconduct; and (3) injury sustained from acts performed pursuant to the policy. See Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted). In addition, before a municipality may be held liable, there must be unconstitutional conduct by an employee. Avalos v. City of Glenwood, 382 F.3d 792, 802 (8th Cir. 2004).

Here, Mrs. McDonald has absolutely no evidence of a pattern of unconstitutional misconduct by the City's employees or of the City's indifference to or authorization of unconstitutional conduct after receiving notice of the misconduct. In addition, she has failed to show any unconstitutional act of a City employee. The Court consequently dismisses Mrs. McDonald's § 1983 claim against the City and her claims of inadequate supervision and training against Tom Does I, II, III, and IV.

**C.   State Law Claims**

Mrs. McDonald brings claims of assault, battery, false imprisonment, intentional infliction of emotional distress, and vicarious liability, and Mr. McDonald sues for loss of

11

consortium. The Court has dismissed all claims over which it had original jurisdiction, and the Court declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3). The Court therefore dismisses these claims without prejudice.

**CONCLUSION**

The Court grants Defendants' Motion for Summary Judgment on the § 1983 claims because the Defendant officers are entitled to qualified immunity, and Mrs. McDonald does not have a valid Monell claim against the City. Plaintiffs' state law claims of assault, battery, false imprisonment, intentional infliction of emotional distress, vicarious liability, and loss of consortium are dismissed without prejudice, for lack of jurisdiction. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Docket No. 34) is **GRANTED**;

2. Counts I, II, and III are **DISMISSED with prejudice**; and

3. Counts IV, V, VI, VII, VIII, IX, and X are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 25, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge